O. J. DOGGETT *et al.* Defendants in Error, *vs.* H. N. GREENE, Plaintiff in Error.

*Opinion filed April 18, 1912.*

1. EVIDENCE—*when plaintiff may read questions and answers from deposition taken by the defendant.* If the defendant takes a deposition, which is not withdrawn before the trial, and fails or refuses to read it, the defendant may introduce questions and answers in both the direct and cross-examinations, and he is not precluded from reading the cross-examination upon the theory that by introducing questions and answers in the direct examination he has made the witness his own and cannot cross-examine him.

2. SAME—*when plaintiff cannot testify to conversation with an agent since deceased.* In an action by a broker for commissions on the sale of land upon the theory that he had been employed by the defendant's agent, who is dead, the plaintiff cannot testify to a conversation with such agent not in the presence of the defendant; nor is such incompetency removed by the fact that he introduced in evidence part of a deposition by such agent taken by the defendant but not offered in evidence by the defendant.

3. BROKERS—*authority to agent to fix price does not imply authority to employ sub-agent.*  The fact that the owner of property may have told his son that he wanted to sell the property and authorized the son to fix a price does not imply any authority to the son to employ a sub-agent or broker, nor does it tend in any way to show that he did employ one.

4. SAME—*whether implied authority exists is question of law.*  Whether an agent has express authority to do a certain thing is a question of fact for the jury, but whether implied authority arises from a certain state of facts is a question of law, which should not be submitted to the jury by an instruction.

5. SAME—*when principal is not bound by agent's employment of broker.*  If the only authority to an agent from the owner of property is to sell the property and use his discretion as to price the agent has no authority to employ a broker and bind the owner to pay the broker's commissions, there being no proof tending to show that the agent could not make the sale personally, or to show any established custom in the place where the agency was to be exercised for the agent to employ brokers.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. MAX EBERHARDT, Judge, presiding.

GEORGE A. TRUDE, and M. MARSO, for plaintiff in error.

BRADLEY, HARPER & EHEIM, (THOMAS E. D. BRADLEY, of counsel,) for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On November 2, 1903, the plaintiff in error, Horatio N. Greene, at Owego, New York, conveyed to Julia F. Heyworth, of Chicago, for the consideration of $45,000, a lot at 1261 Michigan avenue, in said city of Chicago.  He was sued in the municipal court of Chicago by the defendants in error, a firm of real estate brokers, for commissions alleged to have been earned in bringing about the sale.  A

trial resulted in a verdict for $1125, upon which judgment was entered. The Appellate Court for the First District affirmed the judgment, and a writ of *certiorari* was granted to bring the record under review in this court.

There was uncontradicted evidence of the following facts: The defendant, Horatio N. Greene, has his home in Chicago but for many years spent most of his time in traveling, and his son, Dr. Frank C. Greene, who was a merchant in Chicago, looked after the property in a general way and collected the rents. Julia F. Heyworth owned adjoining property and the two families had been neighbors and friends for a great number of years. There had been occasional negotiations for the purchase of the property by Mrs. Heyworth, through her sons, Lawrence and James, with Dr. Greene, for about six years. In October, 1902, Herbert E. L. Doggett, one of the firm of brokers, called on Dr. Greene in reference to a sale of the property to Mrs. Heyworth, and was told by Dr. Greene that he would submit any proposition for a sale to his father, who was out of town. On October 30, 1902, plaintiffs wrote a letter to Dr. Greene submitting an offer from Lawrence Heyworth of about $40,000. On November 4, 1902, Dr. Greene wrote plaintiffs saying that it would be useless for him to submit the offer to his father as he knew it would not be considered. The next day plaintiffs wrote Dr. Greene saying that Mr. Heyworth offered four per cent on $53,000 for a lease for a term of ninety-nine years, with the privilege of purchasing at any time within twenty years at $55,000. Dr. Greene telegraphed the offer to his father, who replied by telegraph: "Offer refused; will not lease; letter coming." About a year after that time the lot was sold, on November 2, 1903, to Mrs. Heyworth and the conveyance was made. In addition to evidence of these facts, Herbert E. L. Doggett testified that he had a conversation with Mrs. Heyworth at her home about purchasing the property and conversations with her son Lawrence urging the pur-

chase; that when the offers contained in the letters failed, he urged Lawrence Heyworth to buy at $45,000; that in the early part of 1903 he met Mrs. Heyworth and her two sons in the office of James, when she was preparing to go to Europe, and urged the purchase, and she told him that she would leave the matter in Lawrence's hands; that Lawrence thought it was best to wait until his mother returned from Europe, and when the witness heard she had returned, in November, 1903, he went to see her, and she informed him that she had purchased the property a few days before. He also testified, over the objection of the defendant, to the contents of a letter from the defendant to his son. The defendant denied any knowledge that Doggett was negotiating for the sale of the property. Mrs. Heyworth denied having a conversation with Doggett at her home relative to the purchase, and did not remember that anything was said at her son's office about letting the transaction stand in abeyance until her return from Europe. She did not think anything was said in regard to the property at that meeting and said that she turned the transaction over to her son James. Lawrence Heyworth testified that he had negotiated with Dr. Greene for the property at different times for seven or eight years, and James Heyworth testified that he had conversations with Dr. Greene all through the spring and summer of 1903, and brought influence to bear by threatening to erect a warehouse on the Heyworth property, and that when Greene finally made an offer of $45,000 he accepted it and the transaction was closed.

Dr. Greene died before the trial but his deposition had been taken by the defendant. The plaintiffs offered in evidence certain questions and answers contained in the deposition in both the direct and cross-examination, making the witness their own for that purpose. The defendant objected to reading the cross-interrogatories and answers, on the ground that having made Dr. Greene their own witness the

plaintiffs were precluded from offering his testimony on cross-examination. In *Adams* v. *Russell,* 85 Ill. 284, it was held that where one party takes a deposition which is not withdrawn before the trial and fails or refuses to read it, the other party may introduce it and may read, the cross-examination. The court did not err in that ruling.

The court permitted Doggett, as above stated, to testify to a statement in a letter alleged to have been written by the defendant to his son, Dr. Greene. A letter was referred to in the telegram, and Dr. Greene had produced it but did not attach it to his deposition and it could not be found. Doggett testified that he saw a letter in Dr. Greene's possession and that it contained this statement: "We do not want to lease the property but want to sell, and use your own judgment as to price." The witness did not say that he knew the handwriting of the defendant, and there was no evidence to identify the letter or show that the defendant wrote it, except that it was in the possession of his son. The defendant afterward testified that he never wrote any letter containing such a statement. But whether the ruling was right or wrong is of no importance, because authority to fix a price, if it existed, raised no inference of authority to employ a sub-agent, which was the principal question upon which the case turned. There was no dispute of the fact that the defendant did not want to lease his property but wanted to sell it, and although the son was submitting offers to his father, if he had authority to fix a price that fact would not tend to prove that he employed the plaintiffs.

Doggett was also permitted to testify that Dr. Greene told him he would accept $45,000 for the property and if Doggett could get it from Heyworth he would pay his commission. Under section 4 of the act in regard to evidence and depositions in civil cases Doggett was not competent to testify to any conversation or transaction with Dr. Greene, the deceased agent, (*Trunkey* v. *Hedstrom,* 131 Ill. 204,)

and his incompetency was not removable by the reading by plaintiffs of the portion of Dr. Greene's deposition. The exception is only where the deposition is read by the adverse party. Doggett was asked, on his cross-examination, whether he ever got an offer of $45,000 from Dr. Greene, but that did not justify the ruling on the ground that the testimony was re-direct examination about a matter inquired of in the cross-examination, so as to bring in evidence of an employment and an agreement to pay a commission.

There was no evidence tending to prove that Dr. Greene had any express authority from his father to employ a broker, and authority to fix a price would not preclude his making a sale himself without the aid of a broker. The court instructed the jury that if they believed, from the evidence, that the defendant gave his son, Dr. Greene, authority to sell the property, and that such authority gave Dr. Greene implied authority to employ a broker to assist him to find a purchaser, then the act of Dr. Greene within the scope of his authority would be binding upon the defendant; and also that if they believed, from the evidence, that the defendant authorized his son, Dr. Greene, to sell the property and use his own discretion as to price, and that the authority was not limited as to the mode or means by which the sale should be accomplished, then the plaintiffs were not required to prove that the defendant gave his son express authority to employ a broker, if the jury believed, from the evidence, that the employment of a broker was one of the necessary, proper and usual things to be done in order to the proper exercise of the authority of Dr. Greene. Whether there is express authority is a question of fact, but the existence of implied authority from a certain state of facts is a question of law. (*Pahlman* v. *Taylor,* 75 Ill. 629; *Merritt* v. *Boyden & Son,* 191 id. 136.) The court erred in submitting a question of law to the jury whether authority to sell the property gave implied authority to employ a broker, and as a question of law the instruction was

a *non sequitur*, since authority to sell property does not, alone, imply authority to employ a broker. It was not a case where an agent is authorized to do some act which he cannot do himself. There was no evidence from which the jury could find that the employment of a broker was one of the necessary, proper and usual things to be done for the proper exercise of the authority to sell and use discretion as to the price. An agent must generally perform his services personally, and he cannot delegate his authority without express permission. It is true that every one is presumed to contract with reference to the usual custom of a trade or business, and if there is a fixed and established custom in the place where the agency is to be exercised for the agent to employ sub-agents, the principal is presumed to consent to such employment, but there was no evidence of any such custom or anything tending to prove that Dr. Greene could not sell the property without the assistance of brokers. The instructions given were wrong.

The defendant asked the court to instruct the jury that if the defendant wrote to his son, Dr. Greene, to sell the property and use his discretion as to price, and that no further or other authority was given in reference to the sale or employment of brokers, then Dr. Greene had no authority to employ the plaintiffs and bind the defendant to pay their commissions. Inasmuch as there was no evidence of any established custom or anything tending to qualify the rule of law, the instruction was correct and ought to have been given.

The judgments of the Appellate Court and municipal court are reversed and the cause is remanded to the municipal court.          *Reversed and remanded.*